NO. 07-10-00116-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

JANUARY 19, 2011

JASON GOMEZ, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

FROM THE 242ND DISTRICT COURT OF HALE COUNTY;

NO. B17957-0902; HONORABLE EDWARD LEE SELF, JUDGE

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**OPINION**

Appellant, Jason Gomez, was convicted of harassment of a public servant,[1] enhanced by allegations of two prior felony convictions.[2] The jury found appellant guilty and the enhancement allegations true. The jury assessed appellant's punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for a term of 60 years. Appellant appeals contending that the evidence was insufficient and

---

[1] See TEX. PENAL CODE ANN. § 22.11(a)(2) (West Supp. 2010).

[2] See Id. § 12.42(d) (West Supp. 2010).

that the sentence was grossly disproportionate. We reverse based on the conclusion that the evidence was insufficient.

Factual and Procedural Background

On December 10, 2008, Plainview police officer Timothy De Leon responded to a reported domestic dispute at a residence in Plainview. Upon arriving on the scene, De Leon observed appellant standing in the front yard of the residence arguing with another man. The other man turned out to be appellant's father. Additionally, De Leon noticed a glass door appeared to be broken and appellant's arm appeared to be cut. De Leon called for an ambulance and approached appellant. While De Leon called for an ambulance, appellant's father went back inside the residence. De Leon attempted to interview appellant about what had occurred. However, appellant refused to talk to De Leon and attempted to go back in the house.

De Leon told appellant to stay where he was and again attempted to question him about what had happened at the residence. Again, appellant ignored the request to stay outside and attempted to go back into the house. De Leon positioned himself between the house and appellant and again advised appellant to stay outside. Appellant then attempted to push De Leon aside and go into the house. Once again, De Leon positioned himself between the house and appellant, and De Leon indicated that he was going to arrest appellant for assault. Appellant tried to push by De Leon once more. By this time, a second Plainview police officer had arrived on the scene, and this officer fired his taser at appellant, causing appellant to collapse to the ground. As De Leon was taking appellant into custody, De Leon realized that he had blood on

2

his face and uniform. Based on appellant's encounter with De Leon appellant was indicted for harassment of a public servant.

At trial, De Leon testified about his encounter with appellant. Additionally, the State introduced a series of photographs that depicted the injuries to appellant on the night in question. These pictures demonstrated that appellant was bleeding significantly at the time of his encounter with De Leon. Based upon this evidence, the jury found appellant guilty.

Appellant appeals contending that the evidence is legally and factually insufficient to demonstrate that appellant caused De Leon to come into contact with his blood with the intent to assault. Additionally, appellant contends that the punishment assessed is grossly disproportionate. We agree with appellant that the evidence is insufficient and reverse and render a judgment of acquittal.

Evidentiary Sufficiency

As an initial consideration, we observe that appellant's appeal contends that the evidence is both legally and factually insufficient. Appellant's brief was prepared and filed before the Texas Court of Criminal Appeals issued its opinion in Brooks v. State, No. PD-0210-09, 323 S.W.3d 893, 2010 Tex.Crim.App. LEXIS 1240, at *25-*26 (Tex.Crim.App. Oct. 6, 2010), wherein the court ruled that there is no distinction between a claim of legal as opposed to factual insufficiency of the evidence. Further, the court expressly overruled Clewis v. State, 922 S.W.2d 126 (Tex.Crim.App. 1996), and its purported application to factual sufficiency questions. Id. at *57. The court appears to urge the reviewing court to apply a more rigorous application of the

3

sufficiency test set forth in <u>Jackson v. Virginia</u>, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). <u>See</u> <u>id.</u> at *58. Therefore, we will review appellant's claims of evidentiary sufficiency under the standard of review set forth in <u>Jackson</u>. <u>See</u> 443 U.S. at 319.

<u>Standard of Review</u>

In assessing the sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. <u>Jackson</u>, 443 U.S. at 319; <u>Ross v. State</u>, 133 S.W.3d 618, 620 (Tex.Crim.App. 2004). We measure the legal sufficiency of the evidence against a hypothetically correct jury charge. <u>See</u> <u>Malik v. State</u>, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997). Finally, when reviewing all of the evidence under the <u>Jackson</u> standard of review, the ultimate question is whether the jury's finding of guilt was a rational finding. <u>See</u> <u>Brooks</u>, 2010 Tex.Crim.App. LEXIS 1240, at *37 (discussing Judge Cochran's dissent in <u>Watson v. State</u>, 204 S.W.3d 404, 448-50 (Tex.Crim.App. 2006), as outlining the proper application of a single evidentiary standard of review).[3]

<u>Analysis</u>

In order to prove appellant guilty of the offense of harassment of a public servant, the State had to prove:

---

[3] We note that this Court has at times quoted <u>Moreno v. State</u>, 755 S.W.2d 866, 867 (Tex.Crim.App. 1988), for the proposition that we had to uphold the verdict of the jury unless it was irrational or unsupported by more than a mere modicum of evidence. We view such a statement, insofar as a modicum of evidence being sufficient evidence, as contrary to a rigorous application of the <u>Jackson</u> standard of review urged by the Court in <u>Brooks</u>.

1. Appellant

2. on or about December 10, 2008,

3. with intent to assault, harass, or alarm

4. cause Timothy De Leon

5. a person appellant knew to be a public servant, a peace officer

6. to contact the blood of appellant

7. and De Leon was then and there lawfully discharging an official duty, to-wit: attempting to detain appellant.

Appellant contends that the evidence is insufficient as to the *mens rea* element of the offense. Specifically, appellant contends that the statute requires that the State prove that appellant caused De Leon to contact the blood with intent to assault, harass or annoy.

The Texas Penal Code provides that there are four culpable mental states in our penal laws. See TEX. PENAL CODE ANN. § 6.02(d) (West Supp. 2010).[4] Those are intentional, knowing, reckless, and criminally negligent. See id. In assessing how the *mens rea* required by a statute is tailored to determine the type of offense involved, an assessment must be made as to the nature of the offense. The categories are nature-of-the-conduct offense, a circumstance-surrounding the conduct offense, or a result-of-conduct offense. See Hill v. State, 265 S.W.3d 539, 541 (Houston [1st Dist.] 2008, pet. ref'd).

---

[4] Further reference to the Texas Penal Code will be by reference to "section ___" or "§ ___."

While discussing result-of-conduct cases, Hill points out that a majority of assault cases and homicide offenses are result-of-conduct cases and as such do not specify the nature of conduct barred. Id. at 542. Further, the nature of the conduct is inconsequential to the commission of the crime, rather, what matters is that the conduct is done with the required culpability to effect the result that the Legislature had specified. Id.

Section 22.11 uses the phrase "with intent to assault, harass or alarm" when describing the actions of a perpetrator of this type of assault. § 22.11(a). In contrast, other sections in the Texas Penal Code chapter dealing with assaultive offenses use phrases such as "intentionally, knowingly, or recklessly," or "intentionally or knowingly." See § 22.01(a)(1)-(3).

> Section 6.03(a) states that:
>
> A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

Id. § 6.03 (West 2003).

Thus, when the analysis of the Hill opinion is applied to the allegations and facts of this case, it is apparent that the assault charged is a result-oriented offense. This is so because the accused must, with intent to assault, harass, or alarm the complainant, cause bodily fluids to actually contact the complainant. See Herrera v.State, 915 S.W.2d 94, 97 (Tex.App.—San Antonio 1996, no pet.) (citing McQueen v. State, 781 S.W.2d 600, 603 (Tex.Crim.App. 1989)). In construing this statute, the Corpus Christi Court of Appeals so found and stated, "In other words, the State was required to prove

6

that [appellant] (1) intended to cause urine to contact Martinez, and (2) intended to harass, alarm or annoy Martinez." Wyatt v. State, No. 13-07-467-CR, 2008 Tex.App. LEXIS 8080, at *8 (Tex.App.—Corpus Christi, Oct. 23, 2008, no pet.) (mem. op. on reh'g., not designated for publication). Wyatt involved a situation in which the inmate threw urine from a cup onto a corrections guard. Id. at *3. While we agree with the result reached in the Wyatt case, we do not subscribe to our sister court's analysis of the intent requirement.

The evidence in this record shows that when De Leon arrived on a domestic disturbance call, appellant had already been injured. De Leon testified that one of the primary issues in dealing with this type of disturbance call was to keep the parties separated. Therefore, when De Leon saw that appellant's father had gone inside, he made the decision to keep appellant outside. Because appellant wanted to return inside the house, there was a confrontation between appellant and De Leon. The assault occurred when appellant attempted on two or more occasions to go past De Leon into the house. De Leon's testimony reflected that appellant attempted to push and shove De Leon out of the way so that he could go inside. Appellant was bleeding extensively before he ever pushed or shoved De Leon. No one testified that appellant made any attempt to collect the blood and then throw it on De Leon. Nor did anyone testify that appellant verbally threatened to throw or wipe blood on De Leon. At most, the testimony revealed that the blood got on De Leon when appellant attempted to go past De Leon to get in the house. That appellant's pushing and shoving of De Leon amounted to an assault is not the question. There was a completed assault the first time appellant shoved and pushed De Leon. There is simply no evidence that appellant

intended to assault, harass or alarm De Leon by causing the blood to contact De Leon. Therefore, the evidence is insufficient to sustain the judgment of the trial court. See Herrera, 915 S.W.2d at 97. Application of the principles set forth in Jackson, 443 U.S. at 319, and Ross v. State, 133 S.W.3d at 620, lead to the inescapable conclusion that no rational jury could have found the essential elements of the offense beyond a reasonable doubt. Appellant's first issue is sustained.

The State vigorously argues that the evidence is sufficient. To support this position, the State cites this court to Campbell v. State, No. 14-04-0227-CR, No. 14-04-0228-CR, 2005 Tex.App. LEXIS 7701 (Tex.App.—Houston [14th Dist.] Sept. 20, 2005, pet. ref'd) (mem. op., not designated for publication), and Jones v. State, No. 01-02-0057-CR, 2002 Tex.App. LEXIS 4611 (Tex.App.—Houston [1st Dist.] June 27, 2002, pet. ref'd) (not designated for publication), for the proposition that the jury can infer intent from an appellant's acts, words, or conduct surrounding the incident. However, each of the cases cited for such inference are cases where the *mens rea* included additional elements, such as knowingly in the Campbell case and knowingly or recklessly in the Jones case. Therefore, the jury was able to consider the conduct surrounding the event and there was testimony that supported its consideration. In Campbell, the testimony revealed that appellant knew one officer was holding on to the door handle of appellant's car and another was partially in appellant's car as appellant attempted to flee into the face of oncoming traffic. Campbell, 2005 Tex.App. LEXIS 7701, at * 7, * 8. In Jones, appellant contested the sufficiency of the evidence to show that he intentionally, knowingly, or recklessly caused bodily injury to the victim. Jones, 2002 Tex.App. LEXIS 4611, at *3. The evidence showed that the victim was standing

8

directly in front of appellant when appellant shoved a shopping cart directly at the victim, resulting in a knot on the victim's leg with broken skin and bleeding. Id. Appellant in Jones claimed that he pushed the cart to get away but never intended to hurt the victim. Id. at *4. Because the required *mens rea* was reckless, there was sufficient proof that appellant was aware his conduct would cause the victim physical pain, hence bodily injury. Id. at *7. As can be seen by the above recitations, the Campbell and Jones cases are distinguishable from the facts presented to this Court. Both cases examine different *mens rea* from the instant case, with lower thresholds of culpability and more significant testimony for the jury to infer that the required *mens rea* was present.

Because of our holding regarding the sufficiency of the evidence, we need not reach appellant's second issue.

Conclusion

The judgment of the trial court is reversed, and a judgment of acquittal is rendered.

Mackey K. Hancock
Justice

Publish.

9